Winifrede Land Company v. Commissioner.
Winifrede Land Co. v. Commissioner
Docket No. 34402.
United States Tax Court
1953 Tax Ct. Memo LEXIS 331; 12 T.C.M. (CCH) 289; T.C.M. (RIA) 53088; March 19, 1953
*331 Where the petitioner sold 19 of an undisclosed number of miners' houses and 13.89 acres of a tract of land containing from 100 to 575 acres for a consideration of $23,000, claiming a loss from the transaction in the amount of $23,538.19, and failed to introduce any evidence upon which a proper allocation of basis could be determined, held, on the record as a whole, the petitioner has failed to sustain its burden of proof. Held, further, where the petitioner failed to introduce evidence from which the adjusted cost basis of its property could be determined, the respondent's determination of the proper depletion allowance for coal mined from the property must be sustained for the reason that the petitioner has failed in its burden of proof. S. D. Stokes, Esq., Route 2, Box 300, Roanoke, Va., for the petitioner. Stephen P. Cadden, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioner's income tax in the amounts of $111.34 and $4,252.12 for the years 1946 and 1947, respectively. At the hearing the petitioner conceded the issues raised by subparagraphs 4(b), 4(c), 4(f) and 4(g) of its petition. *332 It is not clear from the record whether the issue presented by subparagraph 4(i) was affirmatively withdrawn but, if not, it was abandoned by failure to offer proof to substantiate it. The remaining questions presented for our decision are as follows: 1. Whether the petitioner deducted excessive depletion for coal mined from its property of $1,848.50 and $577.19 in the years 1946 and 1947, respectively. 2. Whether the petitioner realized a gain of $13,955.94 on the sale of certain miners' houses and 13.89 acres of land in the taxable year 1947. Findings of Fact The petitioner is a corporation organized under the laws of the State of West Virginia on November 22, 1909, with an authorized capital of $25,000. It filed its Federal income tax returns for the years 1946 and 1947 with the collector of internal revenue for the district of West Virginia. During 1946 and 1947 the officers of petitioner were S. D. Stokes, president and treasurer, James Stokes, son of S. D. Stokes, vice president, and Harriet Neas, daughter of S. D. Stokes, secretary. In 1909 the petitioner acquired by deed 138.29 acres of land in Mingo County, West Virginia, known as the Young tract, and in 1909 also *333 acquired by deed 114.4 acres of land in the same county known as the Duncan tract. For these coal bearing tracts the petitioner gave a consideration of $5,000 in cash and $20,000 in stock of the petitioner. In 1917 the petitioner was approached by representatives of the Winifrede-Thacker Coal Company (hereinafter sometimes referred to as the Coal Company), a corporation which was interested in leasing the petitioner's Young and Duncan tracts for the purpose of producing coal. Neither the Young tract nor the Duncan tract provided a site upon which to locate miners' houses, tipples and other buildings necessary for the production of coal. Adjoining the Young and Duncan tracts was a tract of land known as the Mary Chapman tract situated on Coleman's Branch. A portion of the Chapman tract was sufficiently level to serve as a building site for the plant necessary to a coal mining operation. The petitioner found it necessary to acquire the Chapman tract in order to interest the Coal Company in its Duncan and Young tracts. The history of the Chapman tract was as follows: The Chapman tract had coal in it and was leased for mining purposes from Mary A. and James Chapman to John W. Mitchell *334 by a lease dated September 27, 1900. The property was described in this deed of lease as containing "five hundred acres (500) more or less." John W. Mitchell assigned the Chapman tract coal lease to W. H. Smith, E. A. Randolph and John Strosnider by deed on June 5, 1903. The underlying fee to the Chapman tract was sold by Mary A. and James Chapman to the Big Splint Coal Company by deed dated October 12, 1906, subject to the outstanding coal lease. The Chapman-Big Splint deed described the tract as containing "one hundred acres more or less." On January 25, 1917, the petitioner acquired the Chapman tract fee by warranty deed from the Big Splint Coal Company. The acreage of the Chapman tract was described in the Big Splint-Winifrede Land Company deed as containing "five hundred and seventy-five acres * * * more or less." The deed of January 25, 1917, conveyed the fee subject to the coal rights leased to John W. Mitchell and assigned by him to W. H. Smith, E. A. Randolph and John Strosnider. The consideration paid by the petitioner for the Chapman tract was $17,500. Smith, Randolph and Strosnider conveyed the outstanding coal lease on the Chapman tract to the petitioner by deed dated *335 January 25, 1917. The consideration paid by the petitioner for the outstanding lease was $3,000. On February 21, 1917, the petitioner entered into a 30-year coal royalty lease with the Winifrede-Thacker Coal Company, leasing all three of the above mentioned tracts, that is, the Duncan, Young and Chapman tracts, to the Coal Company for coal mining purposes. The Coal Company, as lessee, was to pay all taxes and to establish a plant on the premises with a capacity sufficient to produce at least 10,000 tons of coal per month. Clause FIFTEENTH of the lease provided as follows: "FIFTEENTH: It is further agreed that all rents and royalties herein agreed to be paid shall be deemed and treated as rents reserved upon contract by the lessor, which reserves to itself all rights of landlords under the laws of West Virginia for the collection of same, and if any of the rents and royalties shall remain unpaid for thirty (30) days after the same shall become due and payable as hereinbefore provided, the lessor shall have the right to enforce payment of the same by the remedies given by the law to landlords against delinquent tenants. It is further agreed that not only the personal property shall *336 be subject to distress as contemplated and directed by law, but also that the lessor may enter upon the leasehold and sell the same, or any part thereof, together with the improvements thereon for the rents and royalties then due upon the default in the payment thereon as aforesaid. At any sale of this lease or leasehold, or any part thereof, under this clause the lessor shall have the right to become the purchaser thereof, free from any and all claims of the lessee." About 1920 the petitioner instituted a general creditors' suit in Mingo County, West Virginia, against the Coal Company. A commissioner was appointed to ascertain the indebtedness of the Coal Company and a receiver was also appointed to operate the Coal Company under the direction of the court. The receiver made a report on or about December 22, 1925. As the result of a creditors' compromise the petitioner acquired, in settlement of its claims against the Coal Company, the improvements, consisting of an undisclosed number of miners' houses and a tipple which had been stripped of its equipment, erected upon the Dunman, Young and Chapman tracts, and cancellation of the coal lease in December 1925. The record contains *337 no documentary evidence relating to the compromise agreement reached or the settlement and disposition of the Coal Company's assets. The claims of the petitioner against the Coal Company were as follows: $11,441.27 due and owing for coal mined, and $8,459.36 representing taxes which the petitioner was forced to pay as a result of the Coal Company's failure to pay taxes as required by the lease. On August 27, 1947, the petitioner conveyed by deed, with certain reservations, to M. C. Clark 13.89 acres of the land contained in the Chapman tract, together with 19 miners' houses located thereon, for a consideration stated in the deed to be $23,000. In its tax return for the taxable year 1947 the petitioner treated the transaction with M. C. Clark as follows: The 19 miners' houses were given a basis of $31,538.19 and a value of $15,000 was assigned to the 13.89 acres of land. The consideration received from M. C. Clark was then subtracted from the $31,538.19 and the $15,000, leaving a deficit of $23,538.19, which the petitioner claimed as a capital loss. An engineering report by the Good Engineering Company, introduced in evidence in this proceeding, shows that the property of petitioner *338 contained at least the following coal deposits as of March 30, 1950: Freeport Seam of Coal
57 Acres
623,808 Net Tons
Coalburg Seam of Coal
153 Acres
1,101,600 Net Tons
Winifrede Seam of Coal
50 Acres
284,400 Net Tons
Williamson-Thacker Seam
373 Acres
2,014,200 Net Tons
Pond Creek Seam of Coal
651 Acres
8,202,600 Net Tons
1,284 Acres
12,226,608 Net Tons
The petitioner kept no books of account and had no minute book for the board of directors' meetings during recent years. No evidence was submitted by the petitioner through the medium of independent appraisers as to the value of the 13.89 acres of land on which the 19 miners' houses were located, except the following appraisal contained in the engineering report of the Good Engineering Company which describes the value of the land as follows: "The writer is also familiar with the tract of land conveyed to M. C. Clark of 13.89 acres. The majority of this tract is good building ground and the value of lots in this section are from $200.00 to $500.00 for a 50 X 100 foot lot. Therefore a value of this tract can be set up at from $1600.00 to $4000.00 per acre." Opinion HILL, Judge: At the onset *339 it must be remembered that the proceedings before this Court are heard de novo. The grist of our judicial mill is facts. Only those facts placed in evidence by the parties at the hearing or through stipulation can be considered by this Court in reaching a decision. The facts presented to the respondent's representatives during the administrative stage of a tax controversy are not available to this Court unless introduced in evidence by the parties. In the statutory notice of deficiency issued by the respondent to the petitioner herein it was determined that the petitioner was entitled to depletion for coal mined from its property at the rate of $.0065 per ton on 100,230 tons of coal mined in 1946, or $651.50. The petitioner alleged error in its petition for the reason that the respondent disallowed $1,848.50 of its claimed depletion for the year 1946. In the same notice of deficiency the respondent determined the petitioner to be entitled to depletion for coal mined from its property at the rate of $.0065 per ton on 169,202 tons of coal mined in 1947, or $1,099.81, plus percentage depletion of five per cent on a $300 royalty, or $15, totaling in all $1,114.81 and not $1,692 as claimed *340 by the petitioner in its return. Section 114 (b) (4) of the Internal Revenue Act of 1951, provided that in the case of coal mines depletion should be allowed at the rate of five per centum of the gross income of the property during the taxable year and that such allowance should not exceed 50 per centum of the net income of the taxpayer and should not be less than the depletion allowed under section 23 (m) of the Internal Revenue Code. Regulations 111, section 29.23 (m)-5. Regulations 111, section 29.23 (m)-2 provides for the computations necessary where discovery value or percentage depletion is not applicable. It provides in part as follows: "* * * If the amount of the basis [cost] as adjusted applicable to the mineral deposit has been determined for the taxable year, the depletion for that year shall be computed by dividing that amount by the number of units of mineral remaining as of the taxable year, and by multiplying the depletion unit, so determined, by the number of units of mineral sold within the taxable year. * * *" This method was employed by the respondent in arriving at the conclusions stated in its statutory notice of deficiency. The number *341 of tons of coal remaining in the petitioner's property was based on those figures relating to the coal deposits of the petitioner's property set forth in our findings of fact. The burden of proving the incorrectness of the respondent's determination is upon the petitioner. To prevail the petitioner must establish the number of tons of coal mined in the taxable year, the number of tons of coal remaining in the property, and the adjusted cost basis of the property. From the records in this case it is impossible to determine the adjusted cost basis of petitioner's property. Petitioner's only evidence on this issue was the testimony of its president that the mine in question has draw slate which added to the problems of the mining operations, and that in 1947 the mining operator abandoned the operations because of strata rolls in the coal formations, and that petitioner's president thought the depletion claimed by the petitioner was fair under all the circumstances. In this posture of the case we have no choice but to hold that the petitioner has failed to meet its burden of proof. We have considered the evidence as a whole, the documents and testimony submitted by the parties, and *342 must sustain the respondent in his determination under this issue. Concerning the second issue it is the position of the petitioner that it sustained a capital loss of $23,538.19 in the taxable year 1947 which resulted from the sale of 13.89 acres of the petitioner's land and the 19 miners' houses located thereon. The evidence submitted by the petitioner to establish its position shows that the Chapman tract, from which the 13.89 acres were sold, contained not less than 100 acres and not more than 575 acres of land. The evidence also establishes that the Chapman tract contained substantial coal deposits. In addition to these facts the evidence establishes that there were between 19 and 40 miners' houses built upon the Chapman tract between 1917 and 1947. How many were taken over by the petitioner in satisfaction of its claims against the Winifrede-Thacker Coal Company in December 1925 is, however, not shown by any evidence whatsoever. No attempt has been made by the petitioner to allocate value to the tract as a whole or the number of houses as a whole at any given time. No depletion schedules applicable to the Chapman tract or depreciation schedules applicable to the miners' houses *343 have been introduced in evidence and there is little or no testimony to establish what the correct depletion and depreciation should have been or was in fact taken. If property acquired as a whole for a lump sum is disposed of a portion at a time, there must be an allocation of basis and gain or loss figured on the disposition of the portion sold. See Nathan Blum, 5 T.C. 702. And while the method of allocation is necessarily dependent upon the facts, facts must be introduced in evidence by the party upon whom the burden rests to establish a basis for purposes of determining gain or loss. Here the petitioner introduced no evidence tending to establish the relation of value of the 13.89 acres to the tract as a whole or the relation of the value of the 19 miners' houses to the total number received by it in satisfaction of its claims against the Winifrede-Thacker Coal Company. Since this is the case, we must sustain the position of the respondent for the evidence considered as a whole fails to support the contention of the petitioner relating to this issue. Decision will be entered for the respondent.